# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RUTH JOHNSON, TERRI LYNN LAND, and MARIAN SHERIDAN<br>    Plaintiffs,<br>        v.<br>JOCELYN BENSON, Secretary of State of the State of Michigan, in her official capacity,<br>    Defendant. | Civil Action No. 1:20-cv-948<br><br>**COMPLAINT** |

Plaintiffs, Ruth Johnson, Terri Lynn Land, and Marian Sheridan, allege and state as follows:

## NATURE OF THE ACTION

1. The Constitution delegates to Congress the power to set the "Times" of presidential elections and to state legislatures the power to set their "Manner." The Michigan Secretary of State is neither Congress nor the Michigan Legislature, yet she has acted to rewrite the times and manner of elections in Michigan. This policy, and the procedures the Secretary is enforcing under it, are unconstitutional and preempted by federal law.

2. The Michigan Legislature has established a bright-line deadline of 8:00 p.m. on November 3, 2020—the Election Day Congress set by law—for mail-in ballots to *arrive* at polling places. Ballots that fail to meet this deadline are not to be counted. The Secretary, however, has acted to move that deadline

by *fourteen days*, in conflict both with State statute and the very regulations the Secretary has promulgated to implement it (which acknowledge the 8:00 p.m. November 3 deadline). This is a federal constitutional violation because Article II mandates that Congress and state legislatures set the times and manner of elections. The Secretary has no such authority, and her policy to violate Michigan law is *ultra vires*.

3. This policy to abandon the Legislature's role in establishing the time and manner of elections threatens the integrity of the upcoming election, will result in widespread and severe vote dilution, will (at a minimum) create substantial uncertainty and delay over Michigan's ability to certify its results, and casts in substantial doubt whether the United States Congress will even accept the results of the popular vote in Michigan, even though it was clearly the Michigan Legislature's intent to satisfy a statutory safe harbor binding Congress to the popular vote. Plaintiffs, registered voters in Michigan and certified electors, will be irreparably harmed in all of these ways and respectfully request that the Court declare the Secretary's policy unlawful and enjoin it.

## JURISDICTION AND VENUE

4. This action arises under the United States Constitution, 42 U.S.C. § 1983, and the doctrine recognized in *Ex Parte Young*, 209 U.S. 123 (1908). Jurisdiction is proper under 28 U.S.C. § 1331 because the plaintiffs' claims arise under the United States Constitution.

5.  Venue is proper under 28 U.S.C. § 1391(b) in this Court because the defendant resides in this district and the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6.  Plaintiff Ruth Johnson is a resident of Oakland County, Michigan, and a registered Michigan voter. Senator Johnson served as the Secretary of State of Michigan from 2011 to 2019, and currently represents the 14th District of Michigan in the Michigan Senate.

7.  Plaintiff Terri Lynn Land is a resident of Kent County, Michigan, and a registered Michigan voter. Ms. Land served as the Secretary of State of Michigan from 2003 to 2011, and is currently a candidate for the Wayne State University Board of Governors. Ms. Land has also been certified pursuant to Mich. Comp. Laws § 168.42 as a nominee of the Republican Party to be an elector for the State of Michigan in the 2020 presidential election

8.  Plaintiff Marian Sheridan is a resident of Oakland County, Michigan, and a registered Michigan voter. Ms. Sheridan has also been certified pursuant to Mich. Comp. Laws § 168.42 as a nominee of the Republican Party to be an elector for the State of Michigan in the 2020 presidential election

9.  Defendant Jocelyn Benson ("the Secretary") is the Secretary of State of Michigan and is named as a Defendant in her official capacity. The Secretary is the State's chief elections administrator and administers election laws in Michigan. Among other duties, she "issue[s] instructions and promulgate[s] rules…for the conduct of elections and registrations in accordance with the laws

of this state" and "[a]dvise[s] and direct[s] local election officials as to the proper methods of conducting elections." Mich. Comp. Laws § 168.31. The Secretary is also responsible for "prescrib[ing] the procedures for election audits that include reviewing the documents, ballots, and procedures used during an election…" *Id.* § 168.31a (2). The Secretary has acted under color of state law at all times relevant to this action.

## FACTUAL ALLEGATIONS

### A. Federal Law Establishes an Election Day and Prohibits Voting After Election Day

10. The executive power of the United States is vested in the President.

11. The Constitution establishes state and federal roles for the promulgation of the law governing presidential elections.

12. The states' role is governed by Article II, § 1, cl. 2, which provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress."

13. The term "Legislature" in this provision means what it says. The legislature of each state, not its executive actors or courts, has authority to define the "Manner" of choosing electors. *See, e.g.*, *McPherson v. Blacker*, 146 U.S. 1, 25 (1892).

14. The role of Congress is governed by Article II, § 1, cl. 4, which provides that "Congress may determine the Time of chusing the Electors, and the

4

Day on which they shall give their Votes; which Day shall be the same throughout the United States."

15. Congress has acted under this authority to set the time of choosing electors, which is now accomplished in all states by some form of popular vote.

16. Various statutes, taken together, "mandate[] holding all elections for Congress and the Presidency on a single day throughout the Union." *Foster v. Love*, 522 U.S. 67, 70 (1997). This "immediate act of the people of America" protects the selection of the President from "cabal, intrigue, and corruption." The Federalist No. 68 at 459 (Hamilton) (Cooke ed., 1961).

17. Further, it is "without question [that] Congress has the authority to compel states to hold these elections on the dates it specifies." *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1170 (9th Cir. 2001). And courts have long-rejected laws which "purport[] to extend beyond the election day the time within which voters' ballots may be received by the election officials for the election of presidential electors" because such actions "conflict with the constitutional congressional Act which requires the electing be done on election day." *Maddox v. Bd. of State Canvassers*, 149 P.2d 112, 115 (Mont. 1944).

18. In a statute setting the familiar Election Day, Congress provided that "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. § 1.

19. As applied in the year 2020, this statute sets Tuesday, November 3, as Election Day.

20. This statute necessarily forbids states from holding votes for the presidency *after* November 3. Another statute provides: "Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct." 3 U.S.C. § 2.

21. This statute only applies if a state has held an election and failed "to make a choice on the day prescribed by law…." It does not authorize states to allow voting in that election on days after the Tuesday after the first Monday in November.

22. Congress also set the time for electors appointed in each state to meet and vote: "The electors of President and Vice President of each State shall meet and give their votes on the first Monday after the second Wednesday in December next following their appointment at such place in each State as the legislature of such State shall direct." 3 U.S.C. § 7.

23. As applied in the year 2020, the date for electors to meet and vote is December 14.

24. A state that fails to comply with these acts of Congress forfeits its votes in the Electoral College.

25. Congress also provided a statutory safe harbor to allow states to provide a binding determination of its electors' vote. 3 U.S.C. § 5.

26. To qualify for the safe harbor, a state must have "provided, by laws enacted prior to the day fixed for the appointment of electors" a means of

determining "any controversy or contest concerning the appointment of" electors, and must have completed the process "at least six days before the time fixed for the meeting of the electors." 3 U.S.C. § 5.

27. As applied in the year 2020, the safe-harbor deadline is December 8.

### B. Michigan State Law Requires Ballots to Be Received by Election Day To Be Counted in Presidential Contests

28. For purposes of Article II, § 1, cl. 2, the "Legislature" of Michigan is the Michigan Legislature.

29. The Michigan Legislature has exercised its constitutional duty to establish rules governing the manner of presidential elections.

30. Michigan assigns all of its electors to the presidential candidate who receives the "greatest number of votes" in the statewide vote. Mich. Comp. Laws § 168.42.

31. As to the time of elections, the Michigan Legislature has followed the law of Congress.

32. Michigan statutes, like federal law, set the state general election as the first Tuesday after the first Monday of November in each election year. Mich. Comp. Laws § 168.641.

33. Voters may vote in person at polling places set up in each "election precinct." Mich. Comp. Laws § 168.654. Michigan law requires that polling places be interspersed through the population to ensure that "not more than 1

polling place is provided for all qualified and registered electors residing" in each election precinct. *Id.*

34. Voters who vote in person on Election Day must be in line at the polling place before 8:00 p.m. on voting day, when the polls close. "On the day of any election, the polls shall be opened at 7 o'clock in the forenoon, and shall be continuously open until 8 o'clock in the afternoon and no longer. Every qualified elector present and in line at the polls at the hour prescribed for the closing thereof shall be allowed to vote." Mich. Comp. Laws § 168.720. In-person voting is not permitted after Election Day.

35. The Michigan Constitution authorizes registered voters "to vote an absent voter ballot without giving a reason, during the forty (40) days before an election, and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail." Mich. Const. Art. 2, § 4.

36. Michigan law requires county officials to prepare absentee ballot applications, as well as print and distribute absentee ballots to those voters who have requested them by mail. *See* Mich. Comp. Laws §§ 168.759a, 168.759b.

37. No different from voters who elect to vote in person, those who elect to vote by mail must vote on or before Election Day, not after Election Day. Michigan law provides that "[t]he ballot must reach the clerk or an authorized assistant of the clerk before the close of the polls on election day. An absent voter ballot received by the clerk or assistant of the clerk after the close of the polls on election day will not be counted." Mich. Comp. Laws § 168.764a.

38. The law requires that any ballot received on Election Day "must be returned to the clerk in time to be delivered to the polls prior to 8 p.m. on election day." Mich. Comp. Laws § 168.759b. In this way, the law enacted by the Michigan Legislature does not permit the counting of votes contained in absentee ballots received after the 8:00 p.m. deadline.[1]

39. Regardless of the postmark (or lack thereof) on an absentee ballot, under Michigan law, it must be received prior to 8 p.m. on Election Day to be counted.

40. The Secretary of State is required to "prescribe the procedures for election audits that include reviewing the documents, ballots, and procedures used during an election…" Mich. Comp. Laws § 168.31a (2). Those rules must be consistent with Michigan and federal statutes

41. The Secretary has previously promulgated rules establishing election procedures, and they are consistent with Michigan and federal statutes. The Secretary publishes an "Election Officials' Manual" with 18 chapters outlining election rules and procedures. In Chapter 6, titled "Michigan's Absentee Voting Process," the Secretary acknowledges that Michigan law provides that "[a]bsentee ballots must be returned to the clerk by 8:00 p.m. on Election Day." Election Officials' Manual, Chapter 6, at 7 (last updated November 2019).[2] The

---

[1] Michigan law provides a limited exception for overseas absentee voters to whom absentee voter ballots were not timely transmitted, Mich. Comp. Laws § 168.759a, and Plaintiffs' claims here do not concern that exception.

[2] *Available at* https://www.michigan.gov/documents/sos/VI_Michigans_Absentee_Voting_Process_265992_7.pdf.

9

Secretary's website also continues to recognize that Michigan law provides that "absentee ballot[s] must be received by your city or township clerk by 8 p.m. on Election Day" to be counted.[3]

42. These regulations demonstrate that the Secretary understands Michigan statutes to establish a non-negotiable deadline of receipt of ballots by 8:00 p.m. on Election Day.

### C. The Secretary's Policy of Non-Enforcement of the Legislature's Deadline for Receipt of Absentee Ballots

43. In May 2020, registered Michigan voters and the League of Women Voters of Michigan filed a mandamus complaint against the Secretary in the Michigan Court of Appeals, challenging the constitutionality of the Legislature's deadline for receiving absentee ballots. *League of Women Voters of Mich. v. Sec'y of State*, Case No. 353654, Mich. Ct. of Appeals (May 22, 2020) ("*League of Women Voters*").

44. In July 2020, the Michigan Court of Appeals issued its decision, upholding the Legislature's requirement that absentee ballots must be received by 8 p.m. on Election Day. In that case, the Secretary did not oppose the plaintiffs' argument to extend the deadline for receiving absentee ballots.

45. The Court of Appeals explained that "it is one thing for parties in a particular action to reach an agreement that only affects those parties in that action. It is yet another thing to allow parties to reach an agreement that would

---

[3] Michigan Secretary of State, Vote at home/absentee voting, *available at* https://mvic.sos.state.mi.us/Home/VoteAtHome (last accessed on September 28, 2020).

affect the entire state by means of an agreement as to the proper interpretation of a statute or the Constitution as will be applied generally." *League of Women Voters,* Op. at 4 (July 14, 2020).

46. After losing, the plaintiffs in that action applied to the Michigan Supreme Court for leave to appeal. The Supreme Court of Michigan denied the application, leaving the Court of Appeals' holding intact. The plaintiffs moved for reconsideration, which the Supreme Court of Michigan denied. In a concurring opinion, Justice Viviano explained that the "Court should not exercise its discretionary power to grant the application" because "this lawsuit appears to be a friendly scrimmage brought to obtain a binding result that both sides desire. Nearly from the start, the defendant Secretary of State has agreed with plaintiffs that the deadline must be struck down as unconstitutional." *League of Women Voters,* Case No. 161671, Op. at 1 (September 11, 2020) (Viviano, J., concurring).

47. Meanwhile, another group of registered Michigan voters and the Michigan Alliance for Retired Americans ("the State Plaintiffs") sought another friendly scrimmage on the same issue and filed a complaint against the Secretary and Michigan Attorney General in the Michigan Court of Claims. *Mich. All. for Retired Americans, et al. v. Benson, et al.*, Case No. 20-000108-MM, Mich. Ct. of Claims (June 2, 2020) ("*Michigan Alliance*").

48. As in other friendly scrimmages, the complaint challenged, *inter alia*, the Election Day receipt requirements applicable to absentee votes. Mich. Comp. Laws §§ 168.759b, 168.764a. The complaint requested that the Secretary

"count ballots received within 14 days after Election Day." *Complaint, Michigan Alliance* at 38.

49. In *Michigan Alliance*, the Secretary "did not challenge the documentary evidence at the hearing and conceded that the affidavits and documentary evidence provide an evidentiary record from which this Court can make findings for purposes of resolving plaintiffs' request for injunctive relief." Opinion and Order, *Michigan Alliance*, at 2–3 (September 18, 2020), Attachment A.

50. The Court refused motions to intervene from the Michigan Senate and the Michigan House of Representatives, thus excluding adverse parties from participating in the case in any capacity that would allow them to appeal the court's decision that usurped their role under the Constitution in setting the time and manner of elections.

51. After permitting no adversarial evidence or arguments before it, the Court concluded that the "unrefuted factual record" and "the uncontroverted data," supported enjoining the ballot receipt deadline. *Id.* at 12.

52. The Court of Claims enjoined "[e]nforcement of the ballot receipt deadlines in MCL 168.759b and MCL 168.764a as they relate to the date and time by which absentee ballots must be received by the clerk in order to be tallied, is enjoined for this election only. All ballots postmarked no later than one day before election day, i.e., November 2, 2020, and received by the deadline for certifying election results [fourteen days after Election Day], are eligible to be counted in the same manner as all provisional ballots." *Id.* at 1–2.

53. The injunction requires the Secretary to count ballots postmarked no later than one day before Election Day, but unlike Michigan law, does not expressly forbid the Secretary or election officials from counting ballots received within the 14-day window that lack any legible postmark.

54. On information and belief, the Secretary intends to allow ballots received after November 3 without a legible postmark to be counted.

55. Having obtained a result from the Michigan Court of Claims that it could not obtain from the Michigan Supreme Court or the Michigan Court of Appeals, the Secretary refused to appeal the decision permitting the non-enforcement of the receipt deadline for absentee ballots.

56. In so doing, the Secretary has chosen to abandon the enforcement of statutes enacted by the Michigan Legislature.

**D.  The Secretary's Late-Receipt Policy Conflicts with Federal Law**

57. Article II delegates the power to enact rules regulating the manner and time of elections to each state legislature and Congress, respectively.

58. The Secretary is neither Congress nor the legislature of Michigan.

59. The State Plaintiffs that enabled the Secretary's policy to ignore state law are neither Congress nor the legislature of Michigan.

60. The Secretary's policy is not promulgated by either Congress or the Michigan Legislature and is *ultra vires*.

61. The law enacted by the Michigan Legislature provides an 8:00 p.m. deadline on Election Day for mail-in ballots to *arrive*. This law is the constitutionally prescribed mandate for Michigan.

62. The Secretary is barred from changing the receipt deadline by operation of Article II of the United States Constitution.

63. The late-receipt deadline also usurps the power of the Michigan Legislature to set the manner of conducting elections. Among other things, it provides that ballots received up to fourteen days after Election Day will be counted.

### E. The Late-Receipt Policy Harms the Plaintiffs

64. The Secretary's policy to count ballots received and even cast after Election Day harms Plaintiffs.

65. All Plaintiffs are registered voters and intend to vote in compliance with federal and state law.

66. Counting votes invalidly cast in violation of federal and state law substantially increases the pool of total votes cast and dilutes the weight of Plaintiffs' votes. More votes will be counted than the law allows to be counted, resulting in paradigmatic vote dilution.

67. In addition, the legal infirmity of the extension of the deadline to receive absentee ballots creates substantial uncertainty about whether persons casting absentee ballots near Election Day will have their votes counted. This uncertainty frustrates Plaintiffs' ability to determine whether to vote in person (and thereby risk exposure to the Coronavirus) or cast absentee ballots (and thereby risk that their votes will not be counted).

68. Further, the extension of the deadline for receiving absentee ballots threatens to disenfranchise all Michigan voters. A procedure for resolving

election contests (which the vote-counting process qualifies as) will not satisfy Congress's safe harbor of 3 U.S.C. § 5 unless it is resolved "by laws enacted prior to the day fixed for the appointment of electors."

69. Adherence to this policy over and against Michigan's "enacted" laws creates a clear and present danger that Michigan's election results will not be accepted under the safe harbor law and therefore will not be accepted by the United States Congress in determining the winner of the presidential election. As the Secretary intends to conduct the election, Congress will have no obligation to respect the popular vote of Michigan's electorate.

70. A further risk is created insofar as the Secretary's election deadlines risk placing the resolution of the contest past dates Congress has set for both the safe harbor and the actual vote of the Electoral College. It will remain unknown who wins the state's vote for at least fourteen days after Election Day, and any contest about the ultimate result is unlikely to reach a conclusion before the safe-harbor deadline or even before the vote of the Electoral College. There is a substantial risk that Plaintiffs' votes will be completely meaningless, if either Michigan loses its representation in the Electoral College or its asserted results do not qualify for the safe harbor.

71. Plaintiffs Land and Sheridan will be subject to harms beyond even these above-stated harms because they are a pledged electors and have agreed to participate in the Electoral College. Their participation is in jeopardy, as is the value and weight of their Electoral College vote, which may not be counted or may not be treated as binding on the United States Congress.

72. These harms are severe and irreparable.

**COUNT I: THE SECRETARY'S POLICY TO RECEIVE ABSENTEE BALLOTS AFTER THE 8 P.M. ON ELECTION DAY DEADLINE EXCEEDS THE SECRETARY'S AUTHORITY TO REGULATE TIMES OR MANNER OF PRESIDENTIAL ELECTIONS**

73. The above-stated allegations are incorporated by reference as if fully stated herein.

74. Article II delegates authority to state legislatures and Congress to determine the manner and timing of presidential election.

75. Congress has set a date for the presidential election this year, November 3, 2020, and the Michigan State Legislature has set a bright-line deadline of 8 p.m. on that date for receipt of all absentee ballots.

76. The Secretary has acted *ultra vires* by acceding to a policy that ignores the Legislature's constitutional role in determining the deadline for when absentee ballots must be received.

77. The extended receipt deadline is contrary to Michigan State Law setting the receipt deadline as 8:00 p.m. on November 3, 2020, and therefore in conflict with Article II, which vests authority solely in the state legislature to modify the manner and time of elections.

78. The Secretary has exceeded her authority by extending the deadline for receiving absentee ballots.

79. Therefore, the Secretary's policy violates Article II of the Constitution.

80. An actual controversy exists between Plaintiffs and Defendant regarding the constitutionality of the extended receipt deadline for absentee ballots.

81. Plaintiffs are entitled to injunctive relief, a declaration of rights under the United States Constitution and any further necessary or proper relief against Defendant pursuant to 28 U.S.C. §§ 2201 and 2202.

### COUNT II: THE SECRETARY'S ACCEPTANCE OF BALLOTS CAST AFTER ELECTION DAY VIOLATES FEDERAL STATUTES GOVERNING THE TIMES OF CHOOSING ELECTORS

82. The above-stated allegations are incorporated by reference as if fully stated herein.

83. Article II authorizes only Congress to set the date for presidential elections.

84. Congress has set the date for the presidential election by statute. As applied in the year 2020, Election Day is Tuesday, November 3.

85. On information and belief, the Secretary intends to count absentee ballots cast up to fourteen days after Election Day if they arrive without a postmark.

86. This violates 3 U.S.C. § 1 because it permits Michigan voters to vote for president *after* Election Day.

87. An actual controversy exists between Plaintiffs and Defendant regarding the constitutionality of the Defendant's policy to count absentee allots received after Election Day.

88. Plaintiffs are entitled to a declaration of rights under the United States Constitution and any further necessary or proper relief against Defendant pursuant to 28 U.S.C. §§ 2201 and 2202.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this court enter judgment against Defendant and grant the following relief:

a. A declaration that the Secretary's policy to violate Michigan and federal law is unconstitutional under Article II;

b. A declaration that any policy to count absentee ballots received after the deadline violates Michigan law setting the deadline for absentee ballots as 8:00 p.m. on Election Day, and federal law, which sets Election Day this year as November 3, 2020.

c. Preliminary and permanent injunctions forbidding the Secretary from counting, or authorizing the counting of, ballots received in violation of Michigan law;

d. Preliminary and permanent injunctions forbidding the Secretary from counting, or authorizing the counting of, ballots received in violation of federal law;

e. Costs and attorneys' fees for the prosecution of this case;

f. Any other relief the Court deems necessary or appropriate.

Date: September 29, 2020	Respectfully submitted,

        /s/ Todd A. Dawson
        TODD A. DAWSON
        BAKER & HOSTETLER LLP
        Key Tower, 127 Public Square
        Suite 2000
        Cleveland, OH 44114
        Phone: (216) 621-0200
        Fax: (216) 696-0740
        tdawson@bakerlaw.com

        DAVID B. RIVKIN*
        ANDREW M. GROSSMAN*
        RICHARD B. RAILE*
        BAKER & HOSTETLER LLP
        1050 Connecticut Ave., N.W.
        Suite 1100
        Washington, DC 20036

        *Attorneys for Plaintiffs*

\* Applications for Admission forthcoming